Good morning, judges. May it please the court and the judges. My name is Jim Miller. I'm representing the appellant and the claimant in the Social Security Disability Court, Mr. Nguyen. The history of this case is part of the issues here, and I want to point out in a very broad way that the history involves this decision of non-disability for a four and a half year period, which is sandwiched between periods of disability found before and afterwards by Social Security. There was six years of disability from June 1997, then about four and a half years of non-disability. That's the decision being challenged here. And then about four and a half years of continuing disability now, starting in April 30, 2008. I'm talking about a very sick man. Mr. Nguyen is very thin. There's no really medical disagreement that he's very sick. And that he has a digestive disorder and various gastrointestinal disorders that have changed over time. And that has been the basis for the decisions, finding him disabled, then not disabled, then disabled again. You know, Ms. Bond has made the point in her supplemental briefing that you didn't bring up the new ruling in the district court. You didn't bring it up in the blue brief. You make sort of a passing reference to it in a footnote in the gray brief, and that you waived this issue of the new ruling in the Luna case. Yes. In part, I agree. That should have been brought up in the opening brief. And I can't actually explain why I did not. Nevertheless, the Luna case came after the district court case was submitted. And I believe that my awareness of the subsequent favorable decision here was delayed. And that is in part why it was raised not as an issue, but as a sort of a footnote, and a reference to a subsequent decision between the same parties bearing on issues here, at least in my opinion. One of the problems that at least I'm facing in this case, as you've summarized for us before you were asked a question, the evidence that was presented on behalf of the appellant, the administrative law judge found that the appellant was not credible and found that the reports, the opinions of the doctors were not sufficient for him to find the appellant disabled. You alerted us to the Luna case, and you have told us that there has been a subsequent administrative law judge very quickly thereafter appear to have reached a different conclusion, that your client was disabled. We don't have the foggiest idea what it was that the second judge heard and why the second judge may have found your client credible and may have been persuaded by the doctors who examined him. Do you see the dilemma we're in? Yes. Well, that was the state of the record until a police counsel submitted the subsequent favorable decision, and that is part of the record now. And it actually does rely on evidence from the period during which he has been found not disabled. So there is some overlap here, and we can tell from the findings of the subsequent ALJs. Counsel, you say that the ALJ2 relied on evidence from the record before the first judge, but ALJ2 was, A, was certainly aware of the first decision and, secondly, made a point of the fact that there had been a perhaps significant worsening of the Mr. Wynn's condition in, I believe, it's in March of 2008. Yes, you are right. You are correct. And if I may interrupt, that March 2008 date is during the period under review here now in this unfavorable decision. That's exactly what I'm talking about, the overlap. You interpret the decision number one as being a decision that April the 18th, 2008, he's not disabled. And it goes all the way through that date, even though it looks like the last evidence submitted to ALJ1 was in February of 2008. So, I mean, it doesn't look like ALJ1 would have had the evidence of the worsening in March. I can't argue with that right now, Your Honor. Some of the evidence that was submitted to the Appeals Council, in other words, after the unfavorable ALJs decision, was from that period in February and March 2008. For example, at excerpts of Record 432, there is evidence showing admission to an emergency room and admission to the hospital. This was evidence that was submitted to the Appeals Council from February 2008 and relates well to the second ALJ's note that great worsening was occurring as of March 2008. So some of that worsening was shown with inferences in the added evidence, we call it, which is evidence only submitted to the Appeals Council. But it's part of the record here in the Ninth Circuit. And so there was some evidence of worsening in the record as we have it here before the Appeals Council, but not before Judge Mathon at the time. Well, let me ask a procedural question, and excuse me if I'm not familiar with Social Security procedures. But if the Appeals Council in 2009 looked at the evidence of worsening in March 2008, are you saying that a possible decision they could have reached was, well, he was certainly disabled as of March 2008, therefore we will reverse and we will have an onset date of March 2008, even though they're not going to reach back to 2003? Is that what you're saying? Well, no, Your Honor, I'm sorry. The thing about the onset date in the subsequent decision, the onset date was taken as the date of the Supplemental Security Income application, which was March 30, 2008. And no, the ALJ did not have any jurisdiction or any authority to consider any dates before that date of application or to make any decisions about whether he was disabled or not before that March 30, 2008. But you're talking about number two. Yes. I'm talking about number one. Okay. You want us to reverse the decision by number one. And if the fact, if the evidence would establish that he got worse in March of 2008, as ALJ number two said, then you're saying either we or the panel, the counsel, could have said, yes, he's disabled, but have the effective date of that March of 2008 rather than 2003? Well, no, I don't know if the panel could do that. But what it does show is inconsistency in the exact dates near the end of the period decided by ALJ one, so that we have inconsistent ALJ views on what happened in March, February and March 2008, as borne out by the two different decisions for those two months. So that overlap is there, although that's a small overlap and possibly could be considered minor, yet could be two months of benefits for this person as well. How much is in controversy the actual dollars, do we know? I'm sorry, I'm not calculating that. Do you have a ballpark idea? Well, it would depend on the status of the Title II application, which would be a very different amount than the SSI application. In the one we're deciding, we're talking about today, that was a concurrent application, SSI and Title II disability insurance benefits. Well, the second decision, which is not before you, is only on SSI. So if it, but if somehow if the, so the Title II application is closed out as of that time, as of the filing of the SSI application in March 2008, and I don't want to, and I'm sorry about this, I don't want to add further complications, but it appears that the attorney at the hearing before the second ALJ voluntarily dropped a Title II application when they did not have to. I don't understand how that happened. What does that have to do with us? Yeah, well, it just shows again there's an overlap. There's a time during which the Title II application and the Title XVI application were both valid. It shows, I think, a little bit of confusion on the part of the two judges and possibly the attorney or the claimant as to what was going on at the second hearing. I see you're down to four minutes. Would you like to reserve those or do any of my colleagues have questions? I'd like to reserve maybe three minutes. I would like to say just a few words about Judge Alarcon's comment. The listing issue, I think, is claimant's best issue and does not depend on credibility. It totally depends on the medical evidence, the medical signs and findings, and the medical opinions. In fact, this claimant was found to meet a listing both in the before period and the after period. And here I just wanted to point out one thing, if you don't mind. It's at Excerpts of Record 007. It's Judge Fogle's decision from district court. On that page, he made a chart of the BMI calculations, that's height and body weight. And it's important to note that on the next page, 008, there's the final reading here. And what that shows is that there were four readings of BMI at a listing level, which we know did not meet the requirements of the listing. And we're not arguing about meeting. We're only arguing about equaling. We have readings that are too close together and too far apart. We'd submit that somehow that shows in an equivalent way a loss of body weight that was persistent and chronic and long-term and not just a figment of his imagination and not dependent on credibility. Thank you, Mr. Moore. Thank you. Good morning. Good morning. My name is Shae Bond, and I represent the Commissioner of Social Security in this matter. I would just like to point out, I think counsel's correct that the ---- Could you keep your voice up a little, please? I'm sorry. Counsel's focus is on the listings matter in this issue and does agree that the record before the ALJ No. 1 was insufficient to show that the condition met listing 508. And then there's the question about the ALJ decision No. 2, which found that the claimant did meet, in fact, that same listing. Our primary argument regarding that second ALJ decision is that the argument should be deemed way because it was brought up too late in these proceedings. Do we have the authority to excuse that waiver? Well, I mean, there's the exceptions to waiver. I think the one that would be most applicable here would be, I guess, a manifest injustice. I would submit that that's not met here. And actually, when I was going through the record last night, I found some evidence, and I wish I had discovered this evidence sooner. I apologize. But it's Dr. Garcia's records that were submitted to the Appeals Council after ALJ No. 1 issued the decision. And when you go through those treatment records, and they document actually the BMI measurements that actually are below the 17.5 BMI requirement for the listing. So the claimant from the BMI measurements from Dr. Garcia's records go from May of 2008 through February of 2009. And I think there's five different measurements. Each one of those measurements fell below the listing's threshold requirement for BMI. So it's very clear that the claimant's condition had deteriorated after the ALJ No. 1's decision. And that explains why we could have two different ALJ decisions here, the one that's currently on appeal, finding no disability, and then the second ALJ decision finding that the claimant had met the listing. Why shouldn't we let the agency sort that out? I mean, you very well may be right. But as Judge Allerton observed, we're probably in the least qualified position to figure this out, you know, from our point of view. Well, I think under Bruton, no. Under Bruton, the court held that there was no basis for remanding based on a subsequent grant of benefits. If you can look on this record and see that involved things such as a different time period, which we have here. There is some overlap, isn't there? Well, no. There's the ALJ No. 1's decision was dated April, I think, 18th of 2008. Right. When the claimant had reapplied, the alleged onset date, which is the date that the claimant had chosen through his representative, was April 30th of 2008. But didn't the second ALJ said he's starting to go downhill in March of 2008? That's in the ALJ's decision. Prior to the first ALJ's ruling. That statement is in the second ALJ's decision. However, a statement that the condition is starting to worsen does not mean that it's listing or disabling. Well, maybe not. But I'm saying, how do we know that? I mean, that's why I'm saying maybe the agency can get to the bottom of that. Well, I think because the statement by the ALJ No. 2 saying that the medical expert had said that the claimant was disabled during the relevant time period at issue, the ALJ could have said that medical expert believed that the claimant's impairments was disabling earlier. But, you know, unfortunately, I'm unable to invade the prior period because there's, you know, this prior ALJ decision. That's not on the record that we have. The ALJ was expressly looking at this period from April 30th forward. There's no indication that he found that the impairments reached a disabling level prior to that date. And that's, I mean, the medical expert was testifying as to that specific time period. And I think that the, you know, the evidence we have from Dr. Garcia showing a deterioration after ALJ decision No. 1 and after the alleged onset date falls within Bruton. In Bruton, the time period was only one day after the prior ALJ decision. We had, you know, day 30 was a finding of not disability and then the next day was a finding of disability. Under Bruton, this court didn't find that as a basis for submitting for a remand. Do you know how much is in controversy? You're an expert at this and we dabble with it. Are we talking hundreds, thousands, tens of thousands of dollars? I mean, for what time period? Well, if he were to prevail in this case. For the entire time period back to when his alleged onset date? Because the alleged onset date was 2003, I think. Okay. Let's just pull that out of the air. Well, for SSI applications, you can't. I don't know the exact dollar amount. But I would assume it would be thousands of dollars. Tens of thousands? Honestly, I don't know the answer to that question. I'm sorry. We're not talking millions, right? We're talking... No. Could you give us a monthly estimate as of, say, March of 08? What's per month? Monthly benefits, the calculation? Just a rough number. This would be very rough, but I think it would probably go from hundreds to maybe probably no more than 2,000. That's going to be a very, very rough number. I don't deal with the calculations, but typically that's not what we litigate. So I can't answer that question. But I think when we look at this record, the record before ALJ No. 1, his decision was supported by substantial evidence. There was no clear legal error here. The evidence just did not show that the claimant met the listing, which I think plaintiff has conceded. As to equaling, I don't think there's really a cogent argument as to explain why the BMI measurements actually would equal the listing here. Just temporally, the requirement of a listing, these readings have to occur within a six-month period. They have to be at least 60 days apart within that six-month period. The BMI readings, again, and this is on ER page 7, the district court did plot out the BMI measurements. There are no measurements that are listing level that come even close to that six-month period. I think the closest we have is 13 months, and then the next closest is 16 months. So I think if plaintiffs could make an equaling argument and say that, you know, temporally I had these BMI numbers that were a little closer to one another, like, say, 7 months, 8 months, 9 months apart, that would be closer to saying you equal the listing. But I just don't think you can extrapolate from these numbers over, let's say, a two or two-and-a-half-year period and say that the claimant's we have to presume that the claimant's weight was below the BMI listing requirement. I mean, it could be very opposite. It could be true. We have to go by what the objective documented findings in the record were. I don't know if this Court has any other questions. I'd be happy to try and answer them. Roberts. I have no further questions. Thank you, Ms. Miller. We would ask that you affirm. Thank you very much. Thank you. Mr. Miller, you've got about two-and-a-half minutes left. Thank you, Your Honors. And I hope you will possibly give time to opposing counsel on this. I quickly looked up while you were asking about the monthly amount. And on the record number 108, it shows that PIA amounts, that's primary insurance amounts, which are calculated monthly, are over $1,000 per month for the individual and possibly over $1,400 per month if there's a child involved. And I believe he does have a minor child. So we're talking about maybe between $1,000 to $1,500 per month for each month the person is found disabled. Also, if there are no further questions about that, I'd like to mention Bruton and Luna. Luna is a case where the Court sent back a decision based on a subsequent favorable decision. And Luna, the Court said, we're confused. We can't tell what the wide difference. In Bruton, cited by opposing counsel, the Court said, no, we can tell. There's no confusion. There's a new age category. There's all kinds of new things happening here. This case is passed to Luna in confusion and inability to tell what the diverse decisions were based on. Counsel, opposing counsel also answered there's no overlap. I want to point out that's only because the legal onset and the second decision were based on the date of the SSI application. There is overlap in the evidence. There could have been overlap in the time periods involved. But, of course, AOJs don't want to see that and have decided not to overlap if they could have avoided it. I guess I have 45 seconds and I'm done unless there's any questions. I guess not. Thank you, Mr. Miller. Ms. Bond, thank you. The case will start you to submit it.
judges: Garbis, Alarcon, Silverman